Good morning. May it please the court, my name is Rex Heinke. I'm here on behalf of the plaintiffs who are the appellants. I, with the court's permission, would like to ask to have three minutes for rebuttal time. The district court granted summary judgment in this case against the plaintiffs on two bases. The first basis was the district court said that the plaintiffs want Epson, the defendant, to disparage its own products and Epson doesn't have to do that. Second, the district court said that the plaintiffs failed to allege that Epson's printers posed a safety risk. So the district court said on each of those independent grounds, plaintiffs lose. We respectfully submit the district court was wrong on both of those points. Let me turn first to the disparagement issue. Nowhere did the plaintiffs ever say that Epson had to disparage its own products. And, indeed, the district court never said that Epson said that – I'm sorry, that the plaintiffs said Epson has to disparage its own products. It would be useful to me to step back a bit and look at what the underlying California legal underpinnings are here. And I gather there's an argument about whether it already is, in fact, the law or isn't the law. But I don't – I gather your underlying contention is that there is a responsibility to disclose a material omission, not to have a material omission, and that there is no limitation on that requirement. No, that is not our position. Go ahead. Our position is there is the limitation set forth in the law mandry case. It's set forth for situations under California law where one has a duty to disclose. But one of them is to – is a material omission that's within the exclusive knowledge of the manufacturer, right? Yes, that's one of those, right. But that's not – I mean, in other words, it amounts to the fact that you have a duty to disclose a material fact that you know about and that the plaintiff won't. Right, that's California law, Your Honor. But that just seems enormously broad. And I don't know – and then there seems to be this gloss on that, that it only applies perhaps to safety violations. And then there's another gloss that seems extremely strange, that it depends on whether it's within or without the warranty period. And I don't understand why that would matter with regard to a fraud claim. Well, Your Honor, let me step back and say that law mandry has four categories where there's a duty to disclose. And it is our position that under three of those, Epson had a duty to disclose. The one we don't contend has to do with fiduciaries. We don't contend they're fiduciary. One of them is the one you mentioned, Your Honor, that is where the defendant has exclusive knowledge of the material facts. And it's here, the exclusive knowledge, is how these cartridges work under circumstances of continuous printing and non-continuous printing. Epson knows how that works, how many pages you get, what it costs, and so on. The plaintiffs certainly don't have that kind of knowledge. The next one is number three, that the defendant actively conceals the information. What case has ever applied that category? There are all sorts of cases, Your Honor. I didn't know that was an issue. But to what? Give me an example. Sorry, Your Honor, I don't have those examples. This wasn't an issue in the district court at all. It was only raised here by Epson on appeal, which we submit in the first instance, they waived the argument. They didn't raise this duty issue below. They didn't dispute there was a duty to disclose. What they argued was we failed to allege safety. And they also argued the other point, the disparagement point. But they never argued that there was no duty to disclose, and they never argued that the facts that we say were not disclosed were not material. But the safety theory is an aspect of the duty to disclose. It's a theory that says unless it's about safety, there's no duty to disclose. Right. So they were arguing that there wasn't a duty to disclose because it wasn't about safety. Okay, Your Honor. I don't want to argue the semantics. But all I'm saying is they didn't argue that we didn't fall within one of the categories of lemandry. What they argued was the safety issue. And on the safety issue, I respectfully submit that the district court was simply wrong about that. I think that's clear from this Court's own decision in Wilson, where the Court distinguishes the Doherty line of cases on the basis that the rationale in Doherty is that you shouldn't extend a warranty forever. So if you claim that the defect manifests itself after the warranty expired, unless there's a safety concern, you can't do that. But this is why it would be helpful to me to understand how this warranty theory could interact with a set of fraud-based statutes and common law claims. If there's a warranty, there's a warranty. You need to sue on the warranty. Right. So why does it matter for the fraud-based claim whether there's a warranty? Well, Your Honor, in the first instance, our position is it doesn't, that Doherty and all those cases have nothing to do with this. That's the first position. But if the Court disagrees with that, then we argue that Doherty is confined to situations of warranties after the warranty has expired. We don't even think any of these cases have any application, the Doherty cases have any application, but the district court disagreed with us on that, and it was the basis of its ruling below. So we felt obliged to respond to that, but we don't think the Doherty line of cases have any application here because it isn't a warranty case. Was Doherty a warranty case? I'm sorry? Was Doherty a warranty case? Yes. And so was Wilson. So let me turn back to Wilson. If you look at footnote 1 in Wilson, it clearly distinguishes cases that follow Doherty on this ground of whether the claim is before or after the warranty. And the whole rationale there is that if you allow somebody to sue an omission claim after the warranty has expired, what you do in effect is extend the warranty forever, and therefore the warranty becomes meaningless because it has no limit, and that's improper. We don't disagree with that. We just say it doesn't have any application in this particular situation. And why is that? Well, because, first, there's no warranty claim here, and second, because all the plaintiffs testified that they discovered this problem with the ink cartridges within the first couple of months of their having bought the Epson printers. They discarded the Epson printers because of the inefficiency of the ink cartridges and went and bought alternative printers. So even if the Doherty line of cases apply, our plaintiffs discovered this problem way before any conceivable warranty could have expired, and therefore the Doherty line of cases and the rationale there has no application here whatsoever. Counsel, I have a different question. I'm concerned about the disclosures that were made on the website, and I understand your contention is that Epson thought that it had data saying that not very many people read the fine print, essentially, didn't scroll down. But why doesn't that? Well, I'd like to give you an opportunity to respond, maybe, without asking any kind of a question about that. Why isn't that an adequate? That's really my question. Why isn't that an adequate disclosure? There are two reasons. The first reason is what they discovered was the use of their printer cartridges under conditions of continuous printing. That is what a commercial printer does or a newspaper printer. So if I'd read that website, would it tell me that that was the yield that I could expect under those commercial conditions? Well, it doesn't talk about commercial conditions. It just talks about continuous printing. But it's misleading. Okay. Why? Because I know at home I don't do continuous printing. That's why it's misleading, because it's telling you about something that's utterly irrelevant to what you do and how you use the printer. But presumably I know that if I'm buying a printer from my home. That's my question. If I'd read that fine print, wouldn't I be unnoticed? Well, you'd be misled about what's going on. Why is somebody telling you that this is how it works under this set of circumstances when those circumstances have nothing to do with how the overwhelming number of consumers use it? It is misleading to tell people about that. It's like saying, you know, this car will get, you know, 50 miles a gallon if you get on a freeway and you drive continuously at 60 miles an hour. Well, this goes back to you started to tell us why you think three out of the four reasons that they had a duty to disclose. And it sounds like on this one you think they made a partial representation but also suppressed some information. Is that right? That's exactly right. That's one of the four tests or situations, I should say, where you can have an omission claim in California. To answer your question more particularly, besides the fact that it's misleading. The disclosure they did make was misleading. Highly misleading. Second, to call this a disclosure is to give it much more credence than it's entitled to. Their own expert testified, and these disclosures were on their website, nowhere else. Their expert testified that only seven-tenths of 1% to 1.3% of consumers ever clicked through to those pages. Well, I understand that. And I think, I hope, I acknowledge that initially. I understand your theory is that they knew people weren't going to click through and read the fine print. Nevertheless, if the disclosure had been there and your folks chose not to read the fine print, I think you'd have a pretty tough row to hoe. Well, Your Honor, maybe so. But this is summary judgment. I submit that it's a triable issue of fact whether these things were misleading and whether these disclosures were adequate to a reasonable consumer. Okay, but none of your guys looked, right? How can they claim to have been misled if they didn't read the website? Do I have that fact wrong? No, no, Your Honor. That's one of the things. They did not go and read these because they had an expectation based on using printers in the past as to how the printers were operated. We all buy consumer products and have a set of expectations in our head that this is how this is going to operate. Were there any disclosures on the packaging? No. Not about that. About yield. Not about yield. This was only on the website. Back to the underlying law questions again. What in Wilson are you relying on? A couple things, Your Honor. Let me point to those. First, if you look at footnote number one where the court distinguishes the Teatsworth case, and among other things it says, Teatsworth, however, is distinguishable because the plaintiffs in that case alleged they began experiencing problems within the first few months of purchasing the machine, i.e., within the express warranty period. That's how they distinguish. And Teatsworth relies on Doherty. That's how they distinguish it. So if you then go on and look at, let's see, page 1142, the court talks about some of the other cases and it says, second in Babbitt v. Hewlett-Packard, I'll leave out the site, the defect manifests itself during the express warranty period and is thus distinguishable from the present case. I understand they say that, but I, first of all, you say Doherty and Wilson were warranty cases, but the relevant discussions were not about warranties. I mean, there were also warranty claims in that case, cases, but I don't know the relevance of that. But second of all, what, it would help me to evaluate that distinction, which I gather is fairly critical, at least to one theory of your case. Why that would matter. Explain to me why it would matter whether it was in the warranty period or not in the warranty period when it's not a warranty case, a theory. Well, Your Honor, I agree with you. Like I said, our first position is it doesn't matter. But when I'm stuck... So then if you thought that Doherty controlled, I mean, I understand Wilson says it's different, but doesn't say it's different and matters for any reason because it doesn't, there's no connective there. There's no tie-up. I don't disagree, Your Honor. I'm with you. But I'm stuck with the fact that the district court said that the Doherty line of case is controlled, so I have to say why Doherty isn't controlling here even if... But if you can't give me a theory that makes any sense, then it's no use to have a theory. Well, no, Your Honor. I'm with you. I say Doherty has nothing to do with it. Those line of cases have nothing to do with it, and there's no obligation to allege a safety concern whatsoever. And that has nothing to do with the case. But on that issue, Wilson is against you, no? No, because it involves a claim that manifests itself after the warranty expired, and the whole rationale of the Doherty line of cases is to say you can't have an omission claim after the warranty expires because if you do that, the warranty becomes meaningless. You extend the warranty out forever. The only theory I can think of is that the warranty then becomes an affirmative representation which an omission is to be judged against. Is that possibly what's going on here? Your Honor, I don't understand these cases. I don't think they make sense. I don't think the courts have thought this through enough, and I don't think they have any application here. But... But the concern which led to them is the concern that if your basic theory were correct, that is, that you have... A manufacturer is always going to know more about his product than a consumer. Of course. And so as a practical matter, it means that if your theory is correct and if we were to level the playing field by taking out all the confused law that's confusing both of us and simply say, use this sentence that says you have to disclose a material, you have a duty to disclose a material fact that the manufacturer has exclusive knowledge of, it would be massive. Well, Your Honor, that's... In the first place, that's California law, and it has to be taken... Well, it's not a statute or anything. It's just some gloss which has been read more narrowly than the sentence started out. Well, even Wilson cites the four law morales. Cites it, but then it limits it to these certain categories. Well, I understand. But see, where it ends up, if you accept Wilson the way the plaintiffs argue it, it ends up saying you can't have an omissions claim unless you allege a safety concern. And there isn't a California... California just doesn't follow any such rule. That's their position. And the district court's position was you've got to allege a safety concern or you don't have an omission claim. That's not California law. Can I ask you a question? Certainly. What diligence did your clients follow when they decided to buy a large quantity of Epson printers? Well, they didn't buy a large quantity. They each bought a printer, I believe. Your Honor, they bought those. They looked at some of the statements on the boxes. Some of them did. But they based their purchase on their understanding of what other printers had produced for them, and they found these completely contrary to that, their reasonable expectations. Well, did they call the Consumer Department of Epson or whatever you want to call it? I don't know if it's such a department. We got this printer and we thought we could run it this way and it's just not measure up to our expectations. And we're lucky to take it back. No, Your Honor, I don't believe they did. I don't know if there's such a department that did not do that. Why not? I don't know why they didn't do that, Your Honor. Huh? I don't know why they didn't do that, Your Honor. That's strange. No, I bought things and they didn't work. If I buy a coffee machine and I have a problem with it, I just call them up, call up the company and talk to someone and tell them what the problem is. And the last time I did that, they sent me another one. Well, Your Honor, I guess you're a better consumer than some of the rest of us. Well, I don't know about that, you know. I mean, I'm just talking about the real world, so nobody complained. Of the three named plaintiffs, they did not complain as far as I know. Three named plaintiffs, Your Honor, as far as I know, they did not complain. I'd also like to... Why are they complaining here? They're complaining here because they were unhappy. Not all of us have had great experiences calling up companies and saying there's a problem. It sounds like you have. They replace the coffee maker. Oh, you just got to get mean and then they listen to you. Well, maybe not everybody has that attitude, Your Honor. I'd like to save a little time for rebuttal, so let me make one last point. I mean, doesn't that just seem strange to me? I understand, Your Honor. I think it's... It doesn't bother you? No, because I've had consumer products which I didn't have work and just threw them out and went and bought something else and didn't spend time arguing with somebody on the phone. May I like to hear your last point? I would just like to make the point also of the Collins decision in the California Court of Appeal, which is after Wilson, and Collins also adopts the same distinction that we've argued for, that if this line of cases applies, it turns on the warranty period. And with that, I'd like to reserve the rest of my time, if I may. Thank you. Okay. Good morning, Your Honor. This is Sean Morgan for Epson. The course of the argument and questioning sort of went down two roads. I have Judge Christin's questions about the actual disclosures and Judge Berzon's about the duty. I'd like to start with Judge Christin's. What about the road I went? I've got you worked into both. Less travel. I've worked both sides of the road. Judge Gutierrez often takes on the harder question rather than the easier one, and he took on the duty question, which I think is a difficult one here. The law is a little bit confusing, although I will try to sort through that. I think the easier question is whether the disclosures were adequate, and I do want to correct a misstatement by Mr. Hanke about the disclosures not appearing on the boxes. On every one of the boxes that each of the name plaintiffs bought and on every cartridge that they bought, there was language to the effect that, quote, cartridge yields vary considerably based on images printed, print settings, paper type, frequency of use, and temperature. So their whole point is we needed to disclose that non-continuous printing, which is frequency of use, changes the print outputs. And we said they varied considerably. Now, we didn't use non-continuous because frequency of use makes a lot more sense to a consumer. But those disclosures. It does? What does that mean to me, frequency of use? How frequently you use your printer. Yeah, I understand that part, counsel. But why would that put me on notice sort of one way or another? Does it mean that if I use it less frequently, I'm going to get a higher yield, or if I use it more frequently, I'm going to get a higher yield? I mean, it seems counterintuitive to me, and at best it's a pretty murky disclosure if I'm relying on that. It depends on whether you're talking about how long the cartridge will last or how many prints you'll get. Yes, frequency of use will make your cartridge last longer if you're not using it frequently, depending on how big the print jobs are when you do do them. But all printers, not just Epson's, use ink for maintenance and cleaning, and so that's how it works in the frequency of use. Even when you're not using it, ink occasionally gets used for those functions. I was aware of that disclosure being on the box because it tells me that in the briefing. It just didn't strike me that that was going to be very meaningful to a consumer. I was more interested in the website disclosure. The website ones are a little more extensive. They explain exactly how the print yields are calculated. In fact, they even show you images of the five pages that are used for the printing, and so you can judge whether this one has lots of color on it. I usually print black and white. I mean, you can start to see how close your user profile is to what's on the website, and then there is additional language about all the factors that affect yields. As Your Honor also pointed out, in addition to the issue of whether disclosures are adequate, there's a causation issue here. None of these consumers looked at any of the information about ink yields, period. And so even if we had put in every disclosure they're asking for, it wouldn't have made any difference to these plaintiffs because they didn't look at ink disclosures, and they very creatively put it in their declaration saying, if I had been told about the ink yields, I wouldn't have bought these. Well, that's not the standard. You have to say that you would have seen it if it had appeared in the place that it would logically go, and they didn't look at those places. So I think there's an easy grounds to affirm on the fact that they can't prove causation here. Going back to, did you have any follow-up, Judge Christin? No, thank you. To Judge Berzon's point of questioning, I think you were sort of alluding to, you know, what is the duty here? And I think it's telling that the plaintiffs have had quite a bit of difficulty identifying exactly what it is. And, in fact, in the question they proposed to certify to the California Supreme Court, as it appears in their reply brief, the question says, assuming there is a duty, is that duty to disclose material facts? And so even there, they can't find what the source of the duty is. I mean, what's mysterious here is Lee Mandry has this list of four circumstances, one of which is when the defendant actively conceals a material fact from the plaintiff. That seems, that's an omission, any omission claim. I mean, it's a duty to disclose, meaning if you have a material fact, you have a duty to disclose it, apparently. Well, I think there's a factual problem on our record, and then there's a larger problem with construing it that way, Your Honor. The first is a factual problem. How can you say that we actively concealed it when we disclosed on the box that yields very considerably depending on frequency of use? Now, they can quibble with that not being the best way to state that, but it certainly can't be active concealment when we put it on the box. As far as exclusive knowledge, Mr. Henke hinted at this. This isn't some problem they're alleging with this batch of Epson printers. This is a technology we've been using throughout the history of their inkjet printers. Now, some customers may not like it, but in lots of fields, that's how competition works. People use different technologies. Some have a preference for one, some for the other. As they recite the facts, although they don't seem to be arguing this, there would possibly be a concealment issue as well, and they did say here that he didn't have a chance to expand on it because there were some facts demonstrating that or suggesting that Epson didn't want the information on an average use basis to get out. Let me address that, Your Honor, a couple ways. First, a lot of the evidence, and I won't go through all of it, but they put on active concealment. Yeah, there are internal discussions of a company saying, let's improve the efficiency of our printers. You're going to find those discussions at any printer company in any company period about improving the product. What are the discussions where let's not tell people? Well, on that particular point, they're talking about these fact tags that go in a Best Buy or a Target. You only get four pieces of copy on those fact tags, and a company is going to pick what are our lead points. If we don't think that we're the most competitive on cost per page, then we're going to try to lobby that that not be one of the four. That's not concealment. It's just people advertise their best traits. And on cost per page, that's an issue that if the market is demanding that information, some printer companies put it out, some don't. The market is taking care of that issue. I don't think we have to create a disclosure obligation just because some small segment of the consumers prefer cost per page as one of their comparison metrics. I think one way to reconcile all these duty cases and the way they're coming out now is that, and your question, Judge Berzon, about inside or outside of warranty, is what they're really turning on, as the courts have said, where there's a product defect, you have a disclosure duty, whether it's inside a warranty or outside a warranty if it's a safety issue. But there is not a case that we've been able to find in the plaintiff-subsided where they have imposed a general disclosure duty in a case where it was a non-defective product. And plaintiffs have said, this is a non-defective product. They just don't like the way it operates. Meaning it prints what it's supposed to print. Yeah, and they think the HP printers are more efficient. We'd argue we're competing on print quality and image quality. And we dispute even their contentions about the print inefficiency, but for purposes of this argument, let's concede that they are more efficient. We're competing on a different characteristic, and there's nothing wrong with that. I did want to point out a couple of cases that respond to something Mr. Henke said, but they weren't in the record. He had mentioned the Collins case, California State Court, concerning defects. Again, that was a product defect case where the product was rendered unusable. It wasn't just a characteristic that people found unattractive. But the Dougherty reasoning of, it's got to be a safety defect to require a disclosure, has been extended by California appellate courts in non-warranty cases and non-defect cases. And the two sites for that are Buller, B-U-L-L-E-R, versus Sutter Health, 160 Cal Up 4th, 981. 160 Cal Up 4th, 981? Yes. Thank you. No, you're supposed to fill out a gum sheet. We'll do that. Would you like the other site now, or should I just do that? I would. Okay. Levine v. Blue Shield, 189 Cal Up 4th, 1117. For instance, in Buller, they argued that an insurer had a duty to disclose that circumstances under which people could get a policy discount. The court found there was no duty under the Dougherty factors. It didn't implicate safety. It wasn't a partial disclosure. The Blue Shield case was a similar one. The defendant had no duty to disclose. They could have received a lower premium if the wife had been the primary insured. The site of Dougherty, no duty to disclose. So I think the California courts, certainly that's the trend, and I think Collins can be distinguished because, again, it was a product defect case. I don't think anybody's disputing that when there's a defect that materially affects the performance of the product, it's got to be disclosed. So what about this notion that the safety limitation applies only outside the warranty period and not inside the warranty period? And why that would be, which is what Mr. Feinberg said. I think the takeaway from the cases, particularly Wilson, the Bagot v. HP case, are that. Elias right now. Right. Go ahead. Courts understand that warranty situations, because the expectations of a plaintiff are bounded by the warranty. They can't just come in. It's not a case where the manufacturer hasn't spoken about the limitations. So is it essentially, is the unspoken assumption of these cases that a warranty is an affirmative representation so that there is a duty to disclose anything inconsistent with the warranty? Is that the unspoken assumption? That's part of it. And the second half of that is then you have no duty to disclose anything else. That's why the warranty cases are different. The parties have set their expectations by the warranty. So yes, anything inconsistent with the warranty would be actionable, and that's why all the product defect cases they find they should have disclosed, because in all those cases they warrant against defects in materials of workmanship. But the corollary of imposing that duty because of a warranty is that anything that's not warranted does not come with a duty. But those cases are not contract cases as such. They're fraud or statutory unfair competition cases which are feeding off the warranty. Correct. Is that essentially what's going on? Yes. In plaintiff's class actions, they don't bring warranty cases, because typically the warranty says you have to do what Jed Fredersen did, which is call up and go through the warranty process. And they know they can't do that on a class basis, and so they sue under consumer fraud statutes. But the limitations of the disclosure duties are governed by warranty law, warranty principles. And here there was no warranty about what you would get under non-continuous conditions. To the contrary, the company expressly said it would vary. But what does it mean then to say that there's a limitation to safety concerns after the warranty but not during the warranty? I think the safety concerns is always – I don't think that matters whether you're in warranty or out of warranty. Well, that's what Wilson seems to say. That's what's so troubling. Wilson didn't address – I mean, all that was before the court in Wilson was out of warranty. So they weren't refining it. Right. But in trying to deal with the other cases, they say, oh, but that was during warranty. Right. And I think because the other cases were so easy because they all were product defect cases that clearly violated the warranty. And so I don't think it was – remember, there's a safety prong, and then there's contrary to an affirmative representation. And so I think all those defect cases come in with that prong and then don't really deal with the safety prong unless their safety is also an issue. And in some of those cases, that's – you know, Falk, for instance, there was also a safety issue. Has the California Supreme Court decided any case along these lines in recent years? Not these specific issues. I would not be anxious to certify an issue, but it would be nice if somebody straightened all this out sometime. But I do think, Judge Berzon, you picked out the problem with what the plaintiffs are urging as the massive burden that would, you know, occur to companies if all of a sudden, even with your warranty limitations, there was a generalized materiality burden to display. The problem is that – I understand all those problems, but there is also a sentence in this California case that does seem to encompass that. So what do we do with that sentence? Which sentence are you referring to? The one that has the list of four categories of which one is not revealing a material fact. That's with the exclusive knowledge of the manufacturer. Well, I think we have to take that one with some common sense. It's got to be a higher standard than just the consumer didn't know when they bought the product because, you know, mundane, everyday items like, you know, a roll of paper towels that's not as absorbent as what you're used to and our competitor has, you don't know until you buy the paper towels. Now, is that active concealment? That just seems to be taking it too far. There's got to be something more. And I think you see that in some of the cases where they found active concealment. For instance, in Falk, they found those allegations sufficient. But then you are reading the sentence out of the case, which, I mean, you're just saying the case is wrong. Well, I think you can put more teeth in active concealment that means more than just – That's a different subcategory. But that subcategory, essentially you're reading it. You're saying the California court got that wrong. It's not a category. I'm not saying it's not a category. I think to prove that category, it takes more than just I didn't know until I bought the product. I understood your response to be focusing on the word exclusive. That wasn't within the exclusive knowledge because you made disclosures, even though one of them I called murky. Well, I think the disclosures affect both. How can we be concealing this fact if we're disclosing it? Well, suppose you had not disclosed as much as you disclosed. Suppose you didn't have anything on your website about the continuous yield and you didn't have the disclaimers about different usage. Would that violate – would that – I still don't think so because I don't think the court, when they were dealing with that language, meant – That's what I'm trying to figure out. Does that mean a light bulb that doesn't last as long as you thought it would, you actively concealed that because you didn't disclose how long this – and this gets into what you were saying before about the breadth of disclosure duties. Now, every company has got to say, this is how long my light bulbs will last under these conditions, or it's considered active concealment just because the plaintiff didn't know before they purchased the product that their expectations would be frustrated. I just think there has to be more to that requirement. You know, if you buy a car and – There's a lot of that stuff going on, you know. I mean, to go buy a light bulb that's supposed to last 10 years, probably lasts a year if you're lucky. Well, right. Or even a different situation when you have one manufacturer say theirs lasts 10 years and another manufacturer who says nothing. Now, the consumer may think, well, this other one must last 10 years as well. But what if it only lasts five? Did they actively conceal that fact from consumers? It just – that just doesn't seem like that can be the standard. Well, the first example or whatever – the second one, no representation is being made as to the life of the bulb. Right, and that was Judge Berzon's question. If there is no representation, would that still constitute active concealment? And I don't believe that can be the case. I think it must be more. But you'd have to concede that LeMondry seems to say it would be and that no California case has walked away from that. That's what's troubling me. Well, I would put – I guess the emphasis would be on the word active. You have to do more than just put your product in the marketplace to make it active concealment. That's concealment. But the other category is when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff. Well, on the record here, I actually think it is accessible. I understand that. That's why I asked you the hypothetical. Sure. You said you thought it would not be a fraudulent concealment, and I have some amount of sympathy for that, except that the statute, at least one California court of appeals, which has been cited all over the place, says otherwise. Well, I was going to add one other set of facts, that for products like this, they're given out to consumer reports and various outlets, consumer reporting outlets, for review. And so there is review out there of all these things. Consumer reports. You're talking about consumer reports. And all sorts of, you know, computer magazines and other ones that review these and they'll say, you know, this uses more ink than some other printers, but you get great quality. So when that press is already out there before people buy their printers, I don't think it's exclusive knowledge. I mean, is it possible that exclusive knowledge means something that isn't really apparent even when you use the product? Well, I think that's what it shows in the cases. For instance, in Falk, with the defective speedometers, was something that you wouldn't recognize in the ordinary force. In other words, the test of when it's exclusive isn't when you're buying it, it's when you're using it. Correct. That would make more sense. I think that makes sense. Is part of all this to get the consumer to buy an additional policy? To buy additional ink? Ink cartridges. No, no, to buy additional coverage. Oh, warranty coverage? When you go buy a vacuum cleaner, they want to know if you want to have an extended warranty for the next three years. Well, it wouldn't be here, Your Honor, because it's not really a – this isn't a – nothing happened where the products went wrong. This is the way they were designed. So there's nothing here that would encourage extra warranty coverage. Here, was there an opportunity to buy an extended warranty? I'm sure Best Buy or the outlets through which people offer these do, but it doesn't come directly, typically, from the manufacturer. I thought there was no warranty that this wouldn't be the case at all. There was no warranty problem here because there was no – Right, exactly. Well, you're telling me that manufacturers are not working to sell those warranties, those extra warranties? It comes with a warranty. I actually don't know if the manufacturer itself does an extended warranty. I think typically those go through the retail outlets. Well, how would a consumer know that? Because they're usually offered at the point of sale. You know, you go into your Best Buy. So is the vacuum cleaner. So we're really down to caveat emptor, huh? Well, your expectations need to be bound by the manufacturer's warranty. The manufacturer's warranted certain attributes, and consumers can't go and impose their own subjective expectations for other attributes. They can't say because I bought an HP printer once, and it performed this way, that the Epson, who's made me no promises about this feature, will behave the same way. I mean, everybody knows that from buying different kinds of cars. I mean, there's lots of different mixes of attributes. All right. Thank you, Your Honor. Thank you. I'd like to emphasize one thing, which is under Lemandry, there are three different ways that we could have a claim. We're not solely arguing the exclusive knowledge, although we're certainly arguing that. But we're also arguing the other two points, which is concealment. Here, Epson went out of its way to stop Best Buy from disclosing exactly what we say should be disclosed, which is the cost per page of printing. They suppress that. That is suppression of facts. Also, the formal. Not that allegation, but in the record, where was that supported? I don't have the site. I'd be happy to send the court a letter with the site. That's okay. If I look back at your brief, it'll give you a citation to the exhibit or whatever. Yes, and I don't believe Epson disputes that it did that. It characterizes it differently. But it doesn't dispute that it went all out to stop Best Buy from doing that. And we submit that's concealment. The other prong is the one we mentioned earlier when you were at the podium. They made a partial representation, but also suppressed some fact. Right. And that's exactly what happened here. The partial representation is about continuous printing. If you wanted to tell a consumer what was really going on when they used Epson printers, you would not talk about continuous printing because it doesn't have anything to do with what they do. Okay, so on the box it said, this is going to vary, and it may vary a lot. Depending on how you use it. It said a lot. It said it's going to vary. I submit whether that is an adequate disclosure under the cases is clearly a question of fact. What's the adjective it uses? Obviously it's not a lot, but doesn't it say something, vary considerably, or? I don't remember. I saw it in the briefing. I'll look back. But in any event, I don't think it's meaningful to tell somebody it varies considerably because considerably is against what standard? It doesn't tell you anything except that it varies. If all printers revealed the same metric, whatever it was, i.e., even if it were this one, isn't there a tradeoff between uniformity and specificity? Sure, but what you should start with is talking about non-continuous printing. But the trouble is that continuous printing is continuous. Once you go into non-continuous, you have all kinds of variables. Of course, but then you can say under circumstances of non-continuous printing, it's going to vary a lot. Let us give you a couple of examples what the effect would be if you did this. For example, once a week you print five pages over six months. And then somebody comes in and says, well, whatever it is you've chosen is not what I want to know or not what most people want to know because most people don't print five pages once a week. Most people print 30 pages twice a week. Your Honor, but they can do a consumer survey with their customers and find out what people usually do. We're not claiming that you have to disclose everything, but we are saying that your disclosures can't be something that has nothing to do with what consumers use the printers for. It's completely misleading to do that. You're not telling people anything meaningful. Again, would it be misleading if everybody revealed the same thing? If everybody revealed the same thing, yes. If by that you mean everybody's revealing continuous printing, yes. Because that has nothing to do. Imperatively indicative. No, because it doesn't have anything to do with the way it operates. Like I said, it's like saying disclosures for, you know, miles per gallon for a car. Let's say every car manufacturer says if you fill your tank up and you get on the freeway and you drive 60 miles an hour without stop, this is the mileage you get. That's essentially what they do. I mean, they have a uniform way of testing. I understand, but that's because the Feds have said this is the way we're going to measure it. But the reason they've done that is precisely because it's to favor uniformity. And then say if you compare it over a uniform metric, then if you use different metrics, comparatively they'll still be the same, or at least one can so guess. But the comparative is, I guess I'm repeating myself, but it's doing something that has nothing to do with the ordinary consumer experience. And it's just meant to make people think that things are different. Is there anything in the record that indicates that if you did all the printers on the same metric, the comparison between them wouldn't be the same as if you did it on a different metric? Well, I think Epson concedes that its printers and lean cartridges are less efficient. It markets itself on the basis or claims it does. But are they less, less efficient or more or less efficient on a comparative, on a continuous basis than if they would be on a twice a week basis? We don't have that kind of information. Right. That's not in the record. That's not in the record, Your Honor. What we do have is all the three named plaintiffs here said in their experience Epson printers were much less efficient. And that's why they immediately got rid of them and went and bought other printers. All right. Thank you. Time's up. Thank you. This matter is also submitted. Now we come to the last matter. Arizona Dream Act Coalition versus Brewer. Let's take a short break. We're going to take a break right now. We'll be back. All rise.  Thank you.  All rise. All rise. Please be seated.
judges: Pregerson, Berzon, Christen